Minnie E. Jones v. Commissioner.
Jones v. Commissioner
Docket No. 45212.
United States Tax Court
T.C. Memo 1955-146; 1955 Tax Ct. Memo LEXIS 191; 14 T.C.M. (CCH) 541; T.C.M. (RIA) 55146; June 13, 1955
Norman D. Keller, Esq., and Thomas C. Jones, Jr., Esq., for the petitioner. Edward L. Cobb, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax and additions thereto as follows: Addition
Addition
Addition
under
under
under
sec.
sec.
sec.
Year
Deficiency
293(a)
291(a)
294(d)
1948
$1,448.68
$72.43
1950
1,770.78
88.54
$442.70
$283.33
*192 The issues for decision are: (1) What was the March 1, 1913 value of 80 acres of the Freeport vein of coal, the petitioner's basis for computing gain from the sale in 1948; (2) As an alternative to (1), is the petitioner entitled to a deduction of $1,636.69 for taxes upon the coal paid by the purchaser out of the purchase money for the account of the petitioner; (3) What was the March 1, 1913 value, the petitioner's basis for cost depletion for some Pittsburgh vein of coal which was removed in 1950 under a strip mining agreement; (4) Is the petitioner entitled to $775deduct as an ordinary loss for 1950 sustained upon the sale of rental property in that year; (5) Was the petitioner negligent in filing her return for 1948 so as to justify the imposition of the 5 per cent addition to the tax under section 293(a); (6) Was the addition to the tax for 1950 under section 294(d)(1)(A) justified by the petitioner's failure to file a declaration of estimated tax; and (7) Was the petitioner's failure to file a declaration of estimated tax and to pay estimated tax for 1950 justification for an addition to the tax under section 294(d)(2) because of substantial underestimate. Findings *193 of Fact The petitioner filed her individual income tax return for 1948 with the collector of internal revenue for the twenty-third district of Pennsylvania. She did not file any declaration of estimated tax for 1950 or make any payments of estimated tax for that year. The petitioner owned 163.01 acres of land on March 1, 1913. Her ownership of 5.06 acres thereof was subject to a life estate which the petitioner acquired in March 1920 at a cost of $2,500. The petitioner conveyed to Greensburg-Connellsville Coal & Coke Co. on July 12, 1948 all of the Freeport vein of coal underlying 80 acres of the aforesaid 163.01-acre tract for the consideration of $18,000. The purchaser paid $16,000 of the purchase price to the petitioner in July 1948 and in November 1948 paid a tax lien on the property amounting to $1,636.69. The balance of the purchase price, $358.08, could have been received by the petitioner during 1948 had she requested it, but it was not actually paid until 1949. The Commissioner, in determining the deficiency for 1948, held that the petitioner received taxable income of $9,000 from the sale of the 80 acres of Freeport coal. He explained that the petitioner's basis, *194 March 1, 1913 value, of the Freeport coal sold in 1948 was zero, the long-term capital gain was $18,000 and 50 per cent thereof was included in income under section 117(b). The fair market value on March 1, 1913, of the 80 acres of Freeport coal sold by the petitioner in 1948 was at least $16,358.08. The petitioner and her husband conveyed on November 24, 1917, all of the coal of the Pittsburgh vein "within the lines running 10 feet above the coal of said vein underlying 112.41 acres of the aforesaid 163.01-acre tract for a consideration of $18,240." The petitioner, by an agreement dated April 18, 1950, leased for a term of one year the exclusive right to strip and remove the remaining Pittsburgh vein of coal underlying the 163.01-acre tract. The lessee removed 27,257.7 tons of coal from the property during 1950 and paid to the petitioner during that year $13,628.85 as royalties and stripping rights on account of the coal mined and removed. The Commissioner, in determining the deficiency for 1950, included the $13,628.85 in gross income and allowed a deduction for cost depletion of the coal in the amount of $3,468.57, to arrive at net income of $10,160.28 taxed as ordinary income. *195 The basis for depletion of the coal which was strip mined in 1950 was not in excess of $3,468.57. The petitioner sold a property on Huey Street in McKeesport for $15,500 in 1950. The net amount realized from the sale, after expenses, was $14,725. The property consisted of 3 lots and a frame house and garage. The house was built about 1889 and was occupied by the Jones family as their home until about August 1944. The petitioner acquired 1 lot by purchase in 1906 for $6,000. She acquired a 1/3 interest in the remaining 2 lots and the improvements by inheritance from her husband when he died in 1932, and she acquired the remaining 2/3 interest in that part of the property by gift from her children in 1933. The 2 lots and the improvements were appraised for Pennsylvania Inheritance tax in 1932 at $15,000. The property was rented by the petitioner continuously from August 16, 1944 until the date of the sale in 1950. The Commissioner, in determining the deficiency for 1950, held that the petitioner had no gain or loss from the sale of the property on Huey Street in McKeesport for $15,500. The evidence fails to show that the petitioner's basis for loss on the property, properly *196 adjusted for depreciation, was in excess of $14,725 at the time of the sale. Opinion MURDOCK, Judge: There is a fair preponderance of the evidence to support the petitioner's contention that the March 1, 1913 value of the 80 acres of the Freeport vein of coal which she sold in 1948 was at least $16,358.08. That value is her basis for computing gain on the sale. The purchase price exceeded that amount by $1,636.69 but the petitioner was entitled to deduct that amount as taxes paid on the property sold. The Commissioner in his determination of the deficiency held that the only other income she had for 1948 was $144.30 of rents. It is thus apparent that she had no taxable income for 1948 and there can be for that year no deficiencies and no addition to the tax since the addition is a percentage of the tax. The Commissioner, in determining the deficiency for 1950, held that the petitioner had net income of $10,210.28. That represents an item of $50 of rent, which is not contested by the petitioner, and $13,628.85, the amount received from the stripping operation, less $3,468.57, the total cost depletion allowed on the stripped coal. The only contention made by the petitioner in this *197 connection is that the cost depletion on the stripped Pittsburgh coal was in excess of $3,468.57. The evidence, however, fails to sustain that contention. The petitioner sold for $18,240 in 1917 all of the Pittsburgh coal "within the lines running 10 feet above the coal of said vein underlying 112.41 acres of the aforesaid 163.01-acre tract." Apparently the purchaser of that coal removed it between 1917 and 1950. The coal which was strip mined under a lease in 1950 was the fringe of Pittsburgh coal left in the 112.41-acre tract, plus whatever coal there was on the remaining 50.6 acres. The fringe coal was that which had an overburden of less than 10 feet. Strip mining was not practiced in the area in 1913, and the fringe coal was usually left undisturbed, apparently because it was regarded as less valuable than the rest of the seam. There is no evidence to show that such fringe coal was ever sold separately, and no one has testified as to the value of such coal on March 1, 1913. The record as a whole does not show that the petitioner's basis for cost depletion on the stripped Pittsburgh coal was in excess of the amount allowed by the Commissioner in determining the deficiency. The *198 petitioner contends that she sustained a loss of $775 on the sale of the Huey Street property in 1950. Her theory is that the basis for the loss on the property was its fair market value at the time in August 1944 when it was converted from personal to business use, , Regulations 111, section 29.23(e)-1; the lots had a fair market value of $13,500 and the house a fair market value of $4,500 at that time; depreciation on the house during the time it was rented was $2,500; the adjusted basis for the property at the time of the sale was $15,500; and since only $14,725 was realized from the sale there was a loss of $775. There is testimony that the fair market value of the land in August 1944 was $13,500 and the fair market value of the house at that time was $4,500, but even if those figures are accepted as a starting point, the evidence does not show that the adjusted basis of the entire property at the time of the sale was $15,500. A variation in the depreciation deduction of $775 would wipe out the alleged loss even upon the petitioner's theory. The evidence does not justify this Court in holding that the allowable depreciation on the house *199 during the rental period was less than $3,275. The evidence as a whole does not justify a finding that the adjusted basis for the property at the time of the sale was in excess of the amount realized, and, consequently, the petitioner has failed to show that she has sustained a loss from the sale of this property. The Commissioner in his brief has conceded that the petitioner is not liable for any addition to the tax for 1950 either under section 291(a), for failing to file an income tax return, or under 293(a), on the ground that a part of the deficiency was due to negligence. Thus the only remaining issues for decision are whether the petitioner is liable for an addition to the tax for 1950 under section 294(d)(1)(A) because of her failure to file a declaration of estimated tax and whether she is liable for an addition to the tax under 294(d)(2) because of substantial underestimate of the tax for 1950. Section 294(d)(1)(A) imposes an addition to the tax where there is a failure to file a declaration of estimated tax within the prescribed time unless the failure was due to reasonable cause not to willful neglect. The petitioner was past eighty in 1950 and her son, an attorney *200 at law, was supposed to take care of her tax affairs. He never filed a declaration of estimated tax for 1950 although he fully understood the law in that respect. His excuse for not filing the declaration is that he did not know how much his mother would receive during the year until the payments were made under the stripping contract and when they were all in he believed that the cost or depletion allowance on the coal would at least equal the amount received. There is no doubt that the Pittsburgh seam of coal on the petitioner's farm had a substantial value on March 1, 1913, despite the failure of proof in this case to show that the March 1, 1913 value of the coal stripped in 1950 exceeded the amount which the Commissioner has allowed. The son's belief in 1950 in regard to the basis of this property was not unreasonable, and, under all of the circumstances, the petitioner's failure to file a declaration of estimated tax for 1950 was due to reasonable cause and not to willful neglect. Section 294(d)(2) provides "If 80 per centum of the tax * * * exceeds the estimated tax * * *, there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount *201 by which such tax * * * exceeds the estimated tax so increased, whichever is the lesser. * * *" This provision obviously applies where tax is due but no declaration of estimated tax was filed and no payments of estimated tax were made. There is no provision for relaxing this provision on the showing of reasonable cause and lack of willful negligence. The determination of the Commissioner of an addition to the tax under this provision is sustained. . Decision will be entered under Rule 50.